**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 28, 2005**

RICKY REED,

    Plaintiff-Counter-Defendant-Appellee,

v                             No. 126534

LINDA SUSAN YACKELL,

    Defendant and Cross-Defendant.

and

BUDDY LEE HADLEY, GERALD MICHAEL
HERSKOVITZ and MR. FOOD, INC.,

    Defendants, Counter-Plaintiffs,
    Cross-Plaintiffs-Appellants.

_____

**BEFORE THE ENTIRE BENCH**

**TAYLOR, C.J.**

We granted leave in this case to determine whether plaintiff, Ricky Reed, who was fired from defendant Mr. Food, Inc., but continued to assist with deliveries on a periodic basis, was an employee of Mr. Food within the meaning of MCL 418.161(1)(*l*) and (n) of the Worker's

Disability Compensation Act (WDCA)[1] and, thus, prohibited from maintaining a tort action for employment-related personal injury in the circuit court against Mr. Food, its owner, and its delivery supervisor. We determine that Reed was an employee of Mr. Food under MCL 418.161(1)(*l*) at the time he was injured because he was in the service of Mr. Food under a contract for hire. We therefore affirm the decision of the Court of Appeals in part. However, we further determine that Reed was an employee of Mr. Food under MCL 418.161(1)(n) at the time he was injured because he was performing a service as a deliveryman for Mr. Food in the course of its business and did not maintain a separate business offering that service, hold himself out to and render that service to the public, or qualify as an employer subject to the WDCA. We therefore reverse the decision of the Court of Appeals in part and remand this case to the circuit court for entry of a directed verdict in defendants' favor. Jurisdiction is thereafter transferred to the Bureau of Worker's Disability Compensation.

### FACTS AND PROCEDURAL HISTORY

Defendant Gerald Michael Herskovitz is the owner of defendant Mr. Food, Inc., which is a retail marketer of

---

[1] MCL 418.101 *et seq.*

meat products. Defendant Buddy Lee Hadley is an employee of Mr. Food and is in charge of its meat deliveries. In 1997, Hadley suggested that Herskovitz hire Reed, whom Hadley had known for approximately ten years, and Herskovitz did so. Herskovitz was not pleased with Reed's performance, however, and fired Reed after a period of only five or six months in December 1997.

After being fired by Herskovitz, Reed primarily supported himself by painting his relatives' homes. But, Reed's association with Mr. Food did not end completely after he was fired, and he supplemented his income by occasionally helping Hadley with deliveries. Specifically, Hadley testified that, on approximately three to five occasions after Reed was fired near the end of 1997, he would hire Reed to help with his deliveries for the day, for which Reed would be paid between $35 and $40 in cash. Although Herskovitz authorized Hadley to obtain help with his deliveries on these days, he testified that he did not know that it was Reed that Hadley actually hired.

On May 7, 1998, during one of these days that deliveries were being made, Reed was riding in a cargo van owned by Mr. Food that was being driven by Hadley. As the van approached an intersection, a car driven by Linda Yackell did not stop at a red light because her brakes malfunctioned. Hadley, who was looking down at paperwork,

3

did not see Yackell's car in time and hit her car. Reed suffered a closed head injury as a result of the accident.

On December 10, 1998, Reed filed a complaint in the circuit court, alleging negligence by the drivers, Hadley and Yackell, liability by Herskovitz pursuant to the owner's liability statute, MCL 257.401, and liability by Mr. Food under the theory of respondeat superior. Hadley, Herskovitz, and Mr. Food (defendants)[2] as relevant to this appeal, defended by asserting that the suit was barred because Reed was an employee of Mr. Food under MCL 418.161(1)(*l*) and (n)[3] and, thus, his exclusive remedy was

---

[2] Yackell is not a party to the proceedings in this Court. Therefore, we will hereinafter use the term "defendants" in reference to Herskovitz, Hadley, and Mr. Food collectively.

[3] MCL 418.161 provides:

> (1)  As used in this act, "employee" means:
>
> * * *
> (*l*)  Every person in the service of another, under any contract of hire, express or implied, including aliens . . . .
>
> * * *
> (n)  Every person performing service in the course of the trade, business, profession, or occupation of an employer at the time of the injury, if the person in relation to this service does not maintain a separate business, does not hold himself or herself out to and render service to the public, and is not an employer subject to this act.

4

under the WDCA.[4]  During trial, defendants moved for a directed verdict on this basis. Reed countered that he was not an employee, but was rather an independent contractor of day labor.  The trial court denied defendants' motion. At the end of trial, the jury returned a unanimous verdict in Reed's favor and awarded him $1,256,320, allocating sixty percent of the fault for the accident to Yackell and forty percent to Herskovitz, Hadley, and Mr. Food collectively.  A judgment in the amount of $502,528 was subsequently entered against Hadley, Herskovitz, and Mr. Food.

Defendants thereafter moved for judgment notwithstanding the verdict (JNOV), again asserting that Reed was an employee at the time of the accident.  The trial court again denied defendants' motion, stating that Reed was not an employee of Mr. Food at the time of the accident but was instead an independent contractor that held himself out to the public to perform general labor.

---

[4] MCL 418.131(1) provides that "[t]he right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease . . . ."

Defendants appealed to the Court of Appeals, which affirmed in an unpublished decision.[5] Defendants then sought leave to appeal in this Court. Pursuant to MCR 7.302(G)(1), in lieu of granting leave to appeal, we vacated the decision of the Court of Appeals and remanded this case to the circuit court with instructions that it determine, either on the existing record or after additional evidentiary hearings, whether Reed was an employee of Mr. Food at the time of the accident. The trial court was also to submit findings of fact to this Court regarding whether Reed was in the service of Mr. Food under either an express or implied contract for hire as set forth in MCL 418.161(1)(*l*) and explained in our then-recent decision in *Hoste v Shanty Creek Mgt, Inc,* 459 Mich 561; 592 NW2d 360 (1999). Further, in order to determine if he was outside the definition of employee in MCL 418.161(1)(n), the trial court was to determine whether Reed both maintained a separate business and held himself out to the public as having such a business.[6]

On remand, the circuit court issued a written order and findings of fact, based on the existing record, stating

---

[5] *Reed v Yackell,* unpublished opinion per curiam of the Court of Appeals, issued February 14, 2003 (Docket No. 236588), vacated 469 Mich 960 (2003).

[6] 469 Mich 960 (2003).

6

that Reed was not an employee of Mr. Food at the time of the accident. With respect to MCL 418.161(1)(*l*) and *Hoste*, the trial court determined that Reed was not performing a service for Mr. Food under either an express or implied contract for hire. In reaching this conclusion, the trial court focused on the fact that Herskovitz had fired Reed before the accident, that Herskovitz had testified at trial that he did not know that Reed was helping Hadley at the time of the accident, and that no evidence had been introduced that income taxes had been withheld from Reed or that he had ever claimed employee status. The trial court reasoned that these facts negated the possibility that either an express or implied contract for hire had been formed because both parties were not aware of its existence and had not agreed to its terms. Finally, the trial court determined that Reed was not an employee under a contract "for hire," reasoning that he did not receive a regular income from Mr. Food but, instead, received only $35 to $40 on three to five occasions. The court concluded that this did not equate to "real, palpable, and substantial consideration" that was intended as wages[7] because, spread over the entire period of about five or six months when the

---

[7] *Hoste*, supra at 576.

occasional employment took place, it amounted to less than $1 per day.

In considering the questions under MCL 418.161(1)(n), the trial court held that Reed did have a qualifying separate business because he was a house painter performing day labor. The court apparently concluded that there was a sufficient holding of himself out for this service to meet the requirements of MCL 418.161(1)(n). But, the court did not elaborate on the evidence it found to establish that.

After receiving the trial court's findings of fact, we remanded this case to the Court of Appeals for reconsideration of whether Reed was an employee within the meaning of MCL 418.161(1)(*l*) and (n) and, if necessary, of additional issues the Court of Appeals had addressed in its earlier decision.[8]

On remand, in an unpublished decision that echoed the previously vacated one, the Court of Appeals affirmed the trial court's determination that Reed was not an employee of Mr. Food at the time of the accident.[9] Unlike the circuit court, the Court of Appeals determined that Reed was an employee under MCL 418.161(1)(*l*) because he was

---

[8] 469 Mich 1051 (2004).

[9] *Reed v Yackell,* unpublished opinion per curiam of the Court of Appeals, issued June 8, 2004 (Docket No. 236588).

under a contract for hire. Yet, because he had, in the view of the Court of Appeals, a separate business in which he held himself out for the performance of the same service he was performing for Mr. Food, he was removed from the definition of employee by virtue of MCL 418.161(1)(n). Interestingly, while expressly acknowledging that in *Hoste* we held that the common-law "economic realities test" for determining whether a worker is an employee or an independent contractor was superseded to the extent that it was inconsistent with MCL 418.161(1)(n),[10] the Court then expressly focused on those same superseded common-law factors (such as how Reed was paid, whether taxes were withheld, whether Mr. Food, Herskovitz, and Hadley had control of Reed's duties, and whether the services Reed performed were an integral part of Mr. Food's business) in making its holding regarding whether Reed was an employee. At no point was an effort undertaken to reconcile this approach with the holding in *Hoste* precluding the consideration of these no longer recognized common-law "economic realities" factors.

Unsurprisingly, defendants again filed an application with this Court for leave to appeal, and we granted defendants' application limited to the issue whether Reed

---

[10] *Hoste, supra* at 572.

9

was an employee within the meaning of MCL 418.161(1)(*l*) and (n) at the time of the accident.[11]

## STANDARD OF REVIEW

Defendants' contention is that the trial court erroneously denied their motions for a directed verdict and JNOV. We review a trial court's denial of both motions de novo. *Sniecinski v Blue Cross & Blue Shield of Michigan,* 469 Mich 124, 131; 666 NW2d 186 (2003). In doing so, we "'review the evidence and all legitimate inferences in the light most favorable to the nonmoving party.'" *Id.,* quoting *Wilkinson v Lee,* 463 Mich 388, 391; 617 NW2d 305 (2000). Only if the evidence, when viewed in this light, fails to establish a claim as a matter of law should a motion for a directed verdict or JNOV be granted. *Id*.

This case also involves the interpretation of statutes, which is a question of law that is also reviewed de novo by this Court. *Hoste, supra* at 569. Our fundamental obligation when interpreting statutes is "to ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute." *Koontz v Ameritech Services, Inc,* 466 Mich 304, 312; 645 NW2d 34 (2002). If the statute is unambiguous, judicial construction is neither required nor permitted. In other

_____

[11] 471 Mich 957 (2005).

words, "[b]ecause the proper role of the judiciary is to interpret and not write the law, courts simply lack authority to venture beyond the unambiguous text of a statute." *Id.*

## DISCUSSION

### A.  Principles of the WDCA

As we have discussed frequently in the past, by enacting Michigan's Worker's Disability Compensation Act, the Legislature replaced common-law liability for negligence in the workplace, and its related defenses, with a comprehensive, statutory compensation scheme that requires employers to provide compensation to employees for injuries arising out of and in the course of employment without regard to fault.  MCL 418.301; *Hoste, supra* at 570; *Clark v United Technologies Automotive, Inc,* 459 Mich 681, 686-687; 594 NW2d 447 (1999); *Farrell v Dearborn Mfg Co,* 416 Mich 267, 274-275; 330 NW2d 397 (1982).  In exchange for this almost automatic entitlement to compensation, the WDCA limits the amount of compensation that an employee may collect and, moreover, prohibits the employee from bringing a tort action against the employer except in limited circumstances.[12]  This principle is expressed in MCL 418.131(1), which provides, "The right to the recovery of

---

[12] *Hoste, supra; Clark, supra; Farrell, supra.*

11

benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease." As we have explained:

> Th[is] language expresses a fundamental tenet of workers' compensation statutes that if an injury falls within the coverage of the compensation law, such compensation shall be the employee's only remedy against the employer or the employer's insurance carrier. The underlying rationale is that the employer, by agreeing to assume automatic responsibility for all such injuries, protects itself from potentially excessive damage awards rendered against it and that the employee is assured of receiving payment for his injuries. [*Farrell, supra* at 274.]

Accordingly, the threshold question in this case is whether Reed is an "employee" under any of the definitions in MCL 418.161 of the WDCA and, therefore, has traded his right to bring a tort action for the assured payment of benefits without regard to fault. *Hoste, supra* at 570-571. As in *Hoste*, several of the definitions set forth in MCL 418.161 do not apply in this case and, therefore, the resolution of this issue requires us to focus only on subsections 161(1)(*l*) and 161(1)(n).[13] As we explained in *Hoste*, these subsections "must be read together as separate and necessary qualifications in establishing employee status." *Hoste, supra* at 573. In other words, our first

---

[13] At the time of the plaintiff's injuries in *Hoste,* the definitions now found in subsections 161(1)(*l*) and 161(1)(n) were found in former subsections 161(1)(b) and 161(1)(d), respectively. *Hoste, supra* at 566 n 2.

task is to determine whether Reed was an employee under the definition set forth in subsection 161(1)(*l*).  If he was, we must then determine whether he meets the requirements of subsection 161(1)(n).  *Id.*

### B.  Analysis of MCL 418.161(1)(*l*)

Subsection 161(1)(*l*) requires us to determine whether Reed was in the service of Mr. Food under any express or implied "contract of hire."  Because it is undisputed that Reed was in the service of Mr. Food at the time of the accident, our determination of this issue requires a two-pronged analysis focusing first on whether Reed was in that service pursuant to an express or implied contractual relationship and, second, as explained in *Hoste, supra* at 573-577, whether that contractual relationship was one "of hire."

With regard to the first inquiry, we agree with the Court of Appeals conclusion that the facts in this case are at least sufficient to establish that Reed was in the service of Mr. Food pursuant to an implied in fact contractual relationship.  "'A contract implied in fact arises when services are performed by one who at the time expects compensation from another who expects at the time to pay therefor.'"  *In re Spenger Estate,* 341 Mich 491, 493; 67 NW2d 730 (1954), quoting *In re Pierson's Estate,* 282 Mich 411, 415; 276 NW 498 (1937).  As the Court of

13

Appeals noted, Reed was expecting to be compensated for the services that he performed that day, just as he had been several times before. Moreover, Herskovitz, having told Hadley to obtain the help he needed to make his deliveries that day, expected to compensate whomever Hadley recruited, just as he had done in the past. The defendants argue that the failure of Herskovitz to know exactly who Hadley would hire is relevant to whether there was an implied in fact contract with Reed. This is not the case. All that is required to establish a contract with Reed is that Hadley had authority to hire.[14] Hadley incontestably had that authority.

Accordingly, having determined that the services Reed was performing for Mr. Food were pursuant to an express or implied contractual relationship, our next inquiry is whether that contractual relationship was "of hire." As we explained in *Hoste, supra* at 576, the linchpin to determining whether a contract is "of hire" is whether the

---

[14] See *Central Wholesale Co v Sefa,* 351 Mich 17, 25; 87 NW2d 94 (1957), quoting 2 CJS, Agency, § 96, pp 1210-1211:

> "Whenever the principal, by statements or conduct, places the agent in a position where he appears with reasonable certainty to be acting for the principal, or without interference suffers the agent to assume such a position, and thereby justifies those dealing with the agent in believing that he is acting within his mandate, an apparent authority results . . . ."

14

compensation paid for the service rendered was not merely a gratuity but, rather, "intended as wages, i.e., real, palpable and substantial consideration as would be expected to induce a reasonable person to give up the valuable right of a possible claim against the employer in a tort action and as would be expected to be understood as such by the employer."

In the present case, the $35 to $40 that Reed received for the approximately eight hours of services he rendered satisfies the requirement we set forth in *Hoste*. In finding otherwise, the circuit court did not dispute that the wages were real, palpable, and substantial on an hourly basis but, instead, calculated them by averaging them over the entire five- to six-month period of the occasional employment to conclude that the wages were less than one dollar a day. This is a puzzling and even arbitrary approach to this issue of calculation that ignores the parties' actual contracted for rate of per diem compensation and replaces it with an approach not taken by the parties. In fact, it seems to be without justification other than it effectively serves to reduce the compensation rate by a high multiple. In contrast, when the neutrally derived approach we are adopting is used, examining the actual agreement to determine the unit of pay, it is clear

15

that this compensation was indeed real, palpable, and substantial when measured against the services performed.

Here, Reed provided approximately eight hours of unskilled, manual labor helping Hadley deliver meat products. This was a service that did not require any particular level of skill, education, or experience. Indeed, the testimony at trial concerning Reed's duties showed only that they consisted of carrying and moving boxes,[15] while even such minimal tasks as handling the paperwork, arranging the delivery schedule, and driving the delivery truck were handled by Hadley. For these eight hours of unskilled, manual labor delivering meat, Reed was paid approximately $35 to $40. Because this was roughly equivalent to the minimum wage rate at the time, it is confounding that a court could conclude that this was not a "real" or "substantial" wage and that it was, instead, as it has to be under the *Hoste* test, a mere gratuity. We reject, with some impatience, such a counterintuitive conclusion.

---

[15] Herskovitz testified that Reed's duties were "[n]othing major. It's to get a box or bring it up or take this out. It's that kind of work." Hadley testified that, in between deliveries, he would have his helpers "go [to the] back [of the delivery truck] and set more stuff up at the door, or if it's up to the front, move it this way or whatever at the time."

It is also appropriate to point out that the circuit court's ad hoc approach of averaging over the entire period of occasional employment, even though there was no such agreement between the parties, would, were it the law, cause most any occasional worker's wage to be insubstantial under *Hoste*, thus making worker's compensation protections for, say, all persons working episodically on a part-time basis unavailable. The facile answer to this, no doubt, is that such workers will have a tort remedy. But, they probably will not. These injured people will be, simply, injured without a remedy. History shows no less. In fact, the leaders of this state a century ago were painfully familiar with the crushing inequity created by this illusory solution of leaving workers with only a tort remedy. As they made clear in passing our original worker's compensation law, this tort remedy was hollow because of the fellow servant rule, as well as the difficulty of the worker's burden of demonstrating, among other things, employer negligence and an absence of contributory negligence on the worker's part. As the Worker's Compensation Commission appointed in 1912 by Governor Chase S. Osborn to draft our first "Workmen's Compensation" law concluded, after examining data regarding the average compensation paid and the wage loss sustained, on average, injured workers did not receive compensation

proportionate to their injuries under the common-law, negligence based system. According to the commission, "[t]his low average was, of course, brought about by the large number of accidents to which, there being no negligence on the part of the employer, there was no legal liability to pay damages."[16] Moreover, the commission concluded that, even in cases where injured workers did procure recovery in the courts, the compensation received was inadequate because of the expense of litigation and attorney fees, and because of the "great delay" that generally occurred between the time of the injury and the final settlement of the action. Indeed, the commission's examination of the cases that were actually litigated revealed that "the damages for injuries similar in effect and extent were widely variant in amount and were on average less than the compensation proposed under suggested compensation acts."[17] It is the case then that our courts, rather than straining to devise some too clever reading of the parties' agreement that has as its end game the allowing of tort claims by a particular injured worker (which formula invariably will be devastating to yet

---

[16] Report of the Employer's Liability and Workmen's Compensation Commission of the State of Michigan, p 16 (1911) (Report).

[17] *Id.*, pp 16-23.

unknown injured workers who, under the new formula, will be unable to secure worker's compensation), should simply look to the parties' actual contract to determine the nature of what was actually agreed on and rule accordingly. All of which is to say that we should recall the venerable axiom that hard cases make bad law and not fall into the practice of allowing them to do so.

Therefore, we conclude that Reed was an employee of Mr. Food at the time of his injuries within the meaning of subsection 161(1)(*l*) because the service he performed was pursuant to an expressed or implied contract of hire and the compensation was real and substantial. It was a wage. Accordingly, our next task is to determine whether Reed meets the requirements of subsection 161(1)(n).

### C. Analysis of MCL 418.161(1)(n)

Subsection 161(1)(n) provides that every person performing a service in the course of an employer's trade, business, profession, or occupation is an employee of that employer. However, the statute continues by excluding from this group any such person who: (1) maintains his or her own business in relation to the service he or she provides the employer, (2) holds himself or herself out to the public to render the same service that he or she performed for the employer, and (3) is himself or herself an employer subject to the WDCA. In other words, subsection 161(1)(n)

sets forth three criteria for determining whether a person performing services for an employer qualifies as what is commonly called an "independent contractor" rather than an employee. As we explained in *Hoste*, these three statutory criteria have superseded the former common-law-based economic realities test for determining whether an individual is an independent contractor to the extent that they differ from the test. *Hoste, supra* at 572.[18]

In the present case, it is undisputed that Mr. Food, or Herskovitz, is an employer subject to the WDCA and that Reed was performing *a* service in the course of Mr. Food's business. We thus turn to the three criteria required for the exception in subsection 161(1)(n): whether Reed, in relation to the service he provided for Mr. Food, (1) maintained a separate business offering *the same* service,

---

[18] As we have explained, the Court of Appeals ignored our statement in *Hoste, supra* at 572, that the economic realities test cannot be used to supersede subsection 161(1)(n) by adding factors to the statute that the Legislature did not see fit to incorporate, and based its analysis on such factors from older cases discussing the economic realities test. These were things such as how Reed was paid and whether taxes were withheld, whether Herskovitz and Hadley had control over Reed's duties, and whether Reed's services were an integral part of Mr. Food's business. The Legislature did not see fit to include such factors in subsection 161(1)(n) and, therefore, the Court of Appeals reliance on them was error. This means then that the prelegislation cases were superseded by the legislation and are thus without authority as law on these issues.

20

(2) held himself out to and rendered *the same* service to the public, and (3) is an employer subject to the WDCA.

Reed's argument, adopted by the Court of Appeals, is that he is an independent contractor because he maintained a separate business and held himself out to the public as a day laborer. Even assuming that Reed had a separate business and held it out to the public, these facts do not establish enough to meet the statutory requirement of subsection 161(1)(n). The first requirement is that the service held out and provided by the separate business be "this service," i.e., the same service that he performed for the employer. It is not enough under the statute that he has any business and holds it out. The reason is that such a reading fails to give effect to all the words in the statute. This we cannot do because we are bound by oath to give meaning to every word, phrase, and clause in a statute. Said conversely, we cannot render parts of the statute surplusage and nugatory. *State Farm Fire & Cas Co v Old Republic Ins Co,* 466 Mich 142, 146; 644 NW2d 715 (2002). Yet, it is this the plaintiff requests, and this we cannot grant.

Therefore, contrary to the conclusions of the trial court and the Court of Appeals, the "service" performed by the person cannot be placed in such broad and undefined classifications as general labor. Rather, it must be

21

classified according to the most relevant aspects identifiable to the duties performed in the course of the employer's trade, business, profession, or occupation.[19] Thus, for example, if the service that the person performs for the employer is roofing, to be an independent contractor and, thus, be ineligible for worker's compensation, the person must maintain a separate roofing business, which roofing business he holds himself or herself out to the public as performing. Accordingly, in this case where the most Reed can point to is that he was a house painter at times, the tests to take him out of the worker's compensation system are not met.

We would again caution that the contrary reading of this requirement, as engaged in by the Court of Appeals and the trial court, would inescapably mean that any moonlighting worker, say an industrial worker at General Motors, Ford, or DaimlerChrysler, who has a janitorial service, lawn care business, a Mary Kay distributorship, or even serves as a compensated choir director at her church, would be without worker's compensation when injured at her day job. This is not what the words of the Legislature allow, and to twist them into saying it is shortsighted in the extreme.

---

[19] Cf. *Michael H v Gerald D,* 491 US 110, 127 n 6; 109 S Ct 2333; 105 L Ed 2d 91 (1989).

Accordingly, we conclude that Reed is not an independent contractor and is subject to the worker's compensation system.

## SUBJECT-MATTER JURISDICTION

As a final matter, we note that the Workers' Compensation Section of the State Bar of Michigan has filed a provocative amicus brief. It argues that this Court's decision in *Sewell v Clearing Machine Corp,* 419 Mich 56; 347 NW2d 447 (1984), holding that the circuit court shares concurrent jurisdiction with the worker's compensation adjudicatory system to determine, in the first instance, whether a person was an employee at the time of the person's injury, is in error. Amicus argues that Const 1963, art 6, § 13[20] and MCL 418.841(1),[21] in tandem, effectively divest the circuit court of subject-matter jurisdiction on this issue and, thus, this case is improperly before us on appeal. Instead, amicus argues,

---

[20] Const 1963, art 6, § 13 provides that "[t]he circuit court shall have original jurisdiction in all matters not prohibited by law . . . ."

[21] MCL 418.841(1) provides:

Any dispute or controversy concerning compensation or other benefits shall be submitted to the bureau and *all questions arising under this act shall be determined by the bureau or a worker's compensation magistrate*, as applicable. [Emphasis added.]

23

the worker's compensation system has exclusive jurisdiction to determine this question. Neither party raised or briefed this jurisdictional issue but were asked at oral argument to address it.

Justice Corrigan has persuasively argued in her dissent that *Sewell* was indeed wrongly decided. However, we decline to overrule *Sewell* on this record. Both Justice Corrigan and amicus curiae are appropriately critical of the unseemly atmospherics surrounding the *Sewell* decision: it was decided peremptorily without plenary consideration, briefing, or argument.[22] Appreciative of that criticism of *Sewell,* we believe it prudent to not replicate it and accordingly decline to overrule *Sewell* in the same peremptory fashion that it was adopted.

As we have made clear in the past, "[w]e do not lightly overrule precedent."[23] Indeed, in *Robinson v Detroit,* 462 Mich 439, 464; 613 NW2d 307 (2000), we discussed several factors to consider before overruling a prior decision. Rather than address the various considerations mentioned in *Robinson,* the amicus only argues that *Sewell* was wrongly decided, and the parties do not even address that. We believe this is an

---

[22] *Sewell, supra* at 65 (Levin, J., concurring).

[23] *Pohutski v City of Allen Park,* 465 Mich 675, 693; 641 NW2d 219 (2002).

24

unsatisfactory predicate for overruling *Sewell,* especially when it is debatable whether *Sewell* was wrongly decided. As plaintiff hurriedly pointed out at oral argument in this case, the relevant language ("all questions arising under this act shall be determined by the bureau or a worker's compensation magistrate") may mean that, before deciding any "questions arising under this act," it is necessary to determine if the cause of action is in tort or worker's compensation. It is only after that is determined, *and* if it is determined that it is indeed a worker's compensation matter, that the bureau's jurisdiction is exclusive. While Justice Corrigan makes a compelling case that this rebuttal argument to the amicus will be found unconvincing upon full consideration, that is not entirely clear at this point. Moreover, even if one assumes that Justice Corrigan and amicus curiae's assertion regarding jurisdiction is the stronger argument, we have had no briefing concerning whether the other stare decisis considerations discussed in *Robinson* are satisfied in the present case.

Further, while all courts must upon challenge, or even sua sponte, confirm that subject-matter jurisdiction exists,[24] that does not mean that once having done so, as we

---

[24] *Bowie v Arder,* 441 Mich 23; 490 NW2d 568 (1992); *Fox v Univ of Michigan Bd of Regents,* 375 Mich 238, 242-243; 134 NW2d 146 (1965); *In re Estate of Fraser,* 288 Mich 392,

(continued…)

did in *Sewell,* that a court must repeatedly reconsider it de novo. Subsequent courts can rely on the earlier determination that has the force of stare decisis behind it. It is that situation that we are in and until a record exists that is full and developed and causes us to question our earlier holding, pursuant to the *Robinson* tests, we see no justification at present to disturb the *Sewell* dual jurisdiction holding.

Finally, given the interest this issue of jurisdiction has generated on the Court, we have no doubt it will be presented to us again in the near future. On that occasion, presumably all parties will have a full opportunity to brief and argue this issue, and it may at that time be appropriate to reconsider *Sewell*.

## CONCLUSION

We conclude that Reed was an "employee" of Mr. Food as the Legislature has unambiguously defined that term in MCL 418. 161(1)(*l*) and (n). Accordingly, we reverse in part the judgment of the Court of Appeals and remand this case to the circuit court for entry of a directed verdict in defendants' favor. Jurisdiction over this case is thereafter transferred to the Bureau of Worker's Disability

---

(…continued)
394; 285 NW 1 (1939); *Ward v Hunter Machinery Co,* 263 Mich 445, 449; 248 NW 864 (1933).

26

Compensation. Should Reed desire to pursue a claim for benefits under the WDCA, he shall present an appropriate claim for compensation to the bureau no later than thirty days after the date this opinion is issued. For the purposes of MCL 418.381(1),[25] the bureau shall treat Reed's claim for benefits as having been filed on December 10, 1998, the date he filed his complaint in the circuit court.

                              Clifford W. Taylor
                              Robert P. Young, Jr.
                              Stephen J. Markman


CAVANAGH and KELLY, JJ.

   We concur in the result only.

                              Michael F. Cavanagh
                              Marilyn Kelly

---

[25] This statute provides:

   A proceeding for compensation for an injury under this act shall not be maintained unless a claim for compensation for the injury, which claim may be either oral or in writing, has been made to the employer or a written claim has been made to the bureau on forms prescribed by the director, within 2 years after the occurrence of the injury.

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

RICKY REED,

    Plaintiff-Counter-Defendant-Appellee,

v                                      No. 126534

LINDA SUSAN YACKELL,

    Defendant and Cross-Defendant.

and

BUDDY LEE HADLEY, GERALD MICHAEL
HERSKOVITZ and MR. FOOD, INC.,

    Defendants, Counter-Plaintiffs,
    Cross-Plaintiffs-Appellants.

_____

WEAVER, J. *(dissenting).*

I dissent from the lead opinion's determination that plaintiff is an "employee" within the meaning of the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq.* Instead of resolving this issue, I would first direct the parties to brief the jurisdictional issue that was raised in the amicus brief filed by the Workers' Compensation Law Section of the State Bar of Michigan concerning whether the circuit court had jurisdiction to determine whether plaintiff was an employee within the meaning of the WDCA.

                                       Elizabeth A. Weaver

**S T A T E   O F   M I C H I G A N**

**SUPREME COURT**

RICKY REED,

    Plaintiff-Counter-Defendant-Appellee,

v

                              No. 126534

LINDA SUSAN YACKELL,

    Defendant and Cross-Defendant.

and

BUDDY LEE HADLEY, GERALD MICHAEL
HERSKOVITZ and MR. FOOD, INC.,

        Defendants, Counter-Plaintiffs,
        Cross-Plaintiffs-Appellants.

_____

CORRIGAN, J. (*dissenting*).

I respectfully dissent from the lead opinion's determination that plaintiff is an "employee" within the meaning of the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq*. Although I agree with the lead opinion's analysis of this substantive issue, and would also conclude that plaintiff was Mr. Food's employee at the time of his accident, I believe that we should first address the question of our jurisdiction.[1] It appears that

_____

    [1] MCL 418.161(1)(n) of the WDCA controls this question.

the Worker's Compensation Bureau (WCB)[2] has exclusive jurisdiction over consideration of plaintiff's employment status. I would specifically direct the parties to brief the important jurisdictional question presented in the amicus brief of the Workers' Compensation Law Section of the State Bar of Michigan.[3]

I am persuaded that *Sewell v Clearing Machine Corp*, 419 Mich 56; 347 NW2d 447 (1984), was wrongly decided. It held that the WCB and the circuit court share jurisdiction to determine a worker's employment status. *Sewell*'s assumption of jurisdiction shared with the WCB violated the plain language of MCL 418.161 without even so much as an analytic nod to the statutory scheme conferring jurisdiction in the WDCA. *Sewell* overruled longstanding authority that had correctly implemented the statute, including *Szydlowski v Gen Motors Corp*, 397 Mich 356; 245

---

[2] The Worker's Compensation Bureau was created by MCL 418.201. Pursuant to Executive Order No. 2003-18, MCL 445.2011, effective December 7, 2003, that agency is now the Workers' Compensation Agency.

[3] Contrary to the lead opinion's assertion, I do not advocate overruling *Sewell* in a "peremptory fashion." *Ante* at 24. I would direct briefing on the jurisdictional issue.

NW2d 26 (1976).[4] Moreover, it contradicted the legislative scheme established to determine disputes involving the award of worker's compensation benefits.

We should review the fundamental question of our jurisdiction as it affects not only the proper exercise of judicial authority in this case, but in the myriad cases involving the exclusive remedy provision. I believe that the parallel universe that *Sewell* created is illegitimate. It offends the separation of powers and should be ended.

Because of the major jurisprudential significance of the jurisdictional issue, I would follow the same approach that we employed in *Lapeer Co Clerk v Lapeer Circuit Court*, 469 Mich 146; 665 NW2d 452 (2003), and *Lapeer Co Clerk v Lapeer Circuit Judges,* 465 Mich 559; 640 NW2d 567 (2002). I would sever and resolve the jurisdictional problem before tackling any remaining issues.

---

[4] See *Jesionowski v Allied Products Corp,* 329 Mich 209; 45 NW 2d 39 (1950); *Dershowitz v Ford Motor Co,* 327 Mich 386; 41 NW2d 900 (1950); *Morris v Ford Motor Co,* 320 Mich 372; 31 NW2d 89 (1948); *Munson v Christie*, 270 Mich 94; 258 NW 415 (1935); *Houghtaling v Chapman,* 119 Mich App 828; 327 NW2d 375 (1982); *Buschbacher v Great Lakes Steel Corp,* 114 Mich App 833; 319 NW2d 691 (1982); *Dixon v Sype,* 92 Mich App 144; 284 NW2d 514 (1979); *Herman v Theis,* 10 Mich App 684; 160 NW2d 365 (1968).

## I. FACTS AND PROCEDURAL HISTORY

In summer 1997, plaintiff was hired as a full-time delivery person by defendant Mr. Food, Inc. Unsatisfied with plaintiff's performance, Mr. Food terminated plaintiff's employment in December 1997. Between December 1997 and May 7, 1998, defendant Hadley, an employee of Mr. Food, hired plaintiff to assist him in deliveries on an as-needed basis. Defendant Herskovitz, the owner of Mr. Food, paid plaintiff about $35 to $40 a day in cash on five to seven occasions. Plaintiff also worked at various jobs, including house painting and general labor, during this four-month period.

On May 7, 1998, plaintiff was a passenger in defendant Mr. Food's delivery truck, assisting defendant Hadley as he had on earlier occasions. Plaintiff expected to be paid for his services in cash that day. The truck was struck by defendant Yackell's vehicle when it did not stop at a red light.[5] Plaintiff was seriously injured as a consequence of the accident.

Plaintiff filed suit, alleging that Yackell was negligent in failing to stop at the red light, and that Mr. Food was vicariously liable for defendant Hadley's

_____

[5] Defendant Yackell is not a party to this appeal.

4

negligence in failing to avoid the collision. Defendants properly raised and preserved their claim that the worker's compensation exclusive remedy provision barred plaintiff's cause of action, as the *Sewell* regime provided. For example, the joint pretrial order reflects that whether the exclusive remedy provision precluded plaintiff's claim was an issue of law to be litigated. Even plaintiff's opening statement raised the applicability of the WDCA's exclusivity provision:

> On that day, Ricky Reed received a telephone call from Buddy Hadley, and asked him to work-under-the-table for $40, as he had done several times since being let go from Mr. Food. And Mr. Herskovitz would pay him $40 to help Mr. Hadley deliver meat on his route in a big freezer truck.
>
> The evidence is going to show that not only had Mr. Herskovitz paid him in the past, but he [was] going to pay him to assist Mr. Hadley on this case.

At the close of plaintiff's proofs, Mr. Food moved for a directed verdict, arguing again that plaintiff was an employee of Mr. Food at the time of the accident, so that the WDCA was plaintiff's exclusive remedy. MCL 418.131(1). The circuit court denied the motion. Following a jury verdict in plaintiff's favor, Mr. Food moved for judgment notwithstanding the verdict (JNOV) under MCR 2.610(1), reiterating its argument that plaintiff's exclusive remedy

5

under worker's compensation precluded plaintiff's claim.[6] The circuit court again denied that motion.

The Court of Appeals affirmed the trial court's denial of Mr. Food's motions for a directed verdict and JNOV.[7] It held that, although plaintiff was under an implied contract of hire with Mr. Food, he was an independent contractor at the time of the accident and, therefore, worker's compensation benefits were not plaintiff's exclusive remedy.

Mr. Food sought leave to appeal in this Court. In lieu of granting leave, this Court vacated the Court of Appeals opinion and remanded the case to the circuit court to determine whether plaintiff was an employee within the

_____

[6] The motion for JNOV stated:

1. . . . Plaintiff's own testimony established that he was an employee of Mr. Food, and the exclusive remedy provision of the Workers Disability Compensation Act (WDCA) deprives the court of subject matter jurisdiction . . . .

2. Plaintiff meets the statutory definition of "employee" in the WDCA because part-time workers are employees, and Plaintiff Reed was "performing service in the course of the . . . business . . . of an employer at the time of the injury.["]

[7] Unpublished opinion per curiam of the Court of Appeals, issued February 14, 2003 (Docket No. 236588).

meaning of MCL 418.161(1)(*l*) and (n).[8] On remand, the circuit court held that plaintiff was not an employee, but an independent contractor, because he maintained a separate business as a day laborer and held himself out to the public as a day laborer. This Court then remanded the case to the Court of Appeals to reconsider whether plaintiff was an employee within the meaning of MCL 418.161(1)(*l*) and (n) in light of the circuit court's findings of fact.[9] The Court of Appeals affirmed.[10]

This Court granted the application of defendants Mr. Food and Hadley for leave to appeal on the issue of plaintiff's employment status on the date of the accident.[11] On April 12, 2005, the Workers' Compensation Law Section filed an amicus brief squarely raising the *Sewell* jurisdictional issue for the first time. Neither plaintiff nor defendants answered the amicus brief.

## II. STANDARD OF REVIEW

The issue of subject-matter jurisdiction turns on questions of statutory and court rule interpretation and

---

[8] 469 Mich 960 (2003).

[9] 469 Mich 1051 (2004).

[10] Unpublished opinion per curiam of the Court of Appeals, issued June 8, 2004 (Docket No. 236588).

[11] 471 Mich 957 (2005).

7

thus presents a question of law. *Lapeer Circuit Judges,* *supra* at 566. This Court reviews questions of law de novo. *Id.; Cain v Waste Mgt, Inc (After Remand),* 472 Mich 236; 697 NW2d 130 (2005). This case also has constitutional implications regarding the legitimate scope of judicial power, which is also subject to review de novo. *Warda v Flushing City Council,* 472 Mich 326; 696 NW2d 671 (2005).

### III. DISCUSSION & ANALYSIS

#### A. Subject-Matter Jurisdiction

Subject-matter jurisdiction may be raised at any time by the parties, or sua sponte by a court. *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608, 630; 684 NW2d 800 (2004); MCR 2.116(D)(3). Subject-matter jurisdiction involves the power of a court to hear and determine a cause or matter. *Langdon v Wayne Circuit Judges*, 76 Mich 358, 367; 43 NW 310 (1889). Since subject-matter jurisdiction is the foundation for a court to hear and decide a claim, it may be considered by the court on its own at any time. *In re Estate of Fraser,* 288 Mich 392, 394; 285 NW 1 (1939).

In *Joy v Two-Bit Corp*, 287 Mich 244, 253-254; 283 NW 45 (1938), this Court defined subject-matter jurisdiction as

8

"the right of the court to exercise judicial power over that class of cases; not the particular case before it, but rather the abstract power to try a case of the kind or character of the one pending; and not whether the particular case is one that presents a cause of action, or under the particular facts is triable before the court in which it is pending, because of some inherent facts which exist and may be developed during the trial." [Citation omitted.]

Subject-matter jurisdiction is conferred on the court by the authority that created the court. *Detroit v Rabaut,* 389 Mich 329, 331; 206 NW2d 625 (1973). Const 1963, art 6, § 1 created the current judicial system in Michigan; it provides for one Supreme Court, the Court of Appeals, one circuit court of general jurisdiction, one probate court, and "courts of limited jurisdiction that the legislature may establish . . . ."

Const 1963, art 6, § 4 provides that this Court has "general superintending control over all courts; power to issue, hear and determine prerogative and remedial writs; and appellate jurisdiction as provided by rules of the supreme court." This Court's appellate jurisdiction to review and pass on decisions of the lower courts necessarily assumes that the lower courts properly exercised subject-matter jurisdiction over the case. If a lower court improperly exercised jurisdiction over a matter delegated to another governmental branch, this Court is

9

devoid of appellate jurisdiction over the subject matter of the case because the Constitution provides no basis for this Court to exercise a power delegated to another department of government. On the contrary, Const 1963, art 3, § 2 specifically provides that "[n]o person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution."

As this Court explained in *Bowie v Arder,* 441 Mich 23, 56; 490 NW2d 568 (1992):

> When a court lacks subject matter jurisdiction to hear and determine a claim, any action it takes, other than to dismiss the action, is void. Further, a court must take notice of the limits of its authority, and should on its own motion recognize its lack of jurisdiction and dismiss the action at any stage in the proceedings. [Citation omitted.]

The specific threshold jurisdictional issue here is whether the Legislature has exclusively delegated to the WCB the power to decide the application of the WDCA to the class of cases that includes plaintiff's case. If that is so, then this Court and the lower courts are divested of subject-matter jurisdiction to determine a plaintiff's employment status for WDCA purposes, and this Court has no choice but to dismiss this case. Proper resolution of this jurisdictional question is critical because it determines

10

whether a jury or a specialized agency will hear and decide the claim. The WDCA actually prohibits a circuit court from exercising subject-matter jurisdiction to decide any questions arising under the WDCA by assigning jurisdiction to the WCB or a worker's compensation magistrate. MCL 418.841(1).

## B. Worker's Disability Compensation Act

The predecessor to the WDCA, known as the "Workmen's Compensation Act," was enacted in 1912 during a special legislative session. *Cain, supra* at 247-248.[12] The worker's compensation system assures employees that they will receive compensation for employment-related injuries, without regard to fault, through worker's compensation benefits. In exchange for "this almost automatic liability, employees are limited in the amount of compensation they may collect from their employer, and, except in limited circumstances, may not bring a tort action against the employer." *Clark v United Technologies Automotive, Inc*, 459 Mich 681, 687; 594 NW2d 447 (1999); MCL 418.131(1). Worker's compensation is thus an injured

---

[12] 1975 PA 279 changed the title of the act from the "Workmen's Compensation Act of 1969" to the "Worker's Disability Compensation Act of 1969" to reflect its applicability to workers of either sex.

worker's "exclusive remedy" for a qualifying work-related injury. *Id.*

MCL 418.301(1) of the WDCA provides, in relevant part:

> An employee, who receives a personal injury arising out of and in the course of employment by an employer who is subject to this act at the time of the injury, shall be paid compensation as provided in this act.

Thus, worker's compensation benefits are available under the WDCA when (1) an employment relationship exists, and (2) a personal injury arose out of, and in the course of, that employment.

The term "employee" for WDCA purposes is defined in MCL 418.161(1). That section controls employment status determinations regarding government workers (§ 161[1][a]), foreign nationals (§ 161[1][b]), public safety personnel (§§ 161[1][c] and [f]), volunteer fire fighters (§§ 161[1][d] and [e]), volunteer civil defense workers (§ 161[1][g]), public health volunteers (§§ 161[1][h] and [i]), emergency rescue workers (§ 161[1][j], peace officers (§ 161[1][k]), workers under contract (§ 161[1][*l*]), trainee program participants (§ 161[1][m]), and even independent contractors (§ 161[1][n[).[13]

---

[13] The question the majority addresses is thus first assigned to the WCB.

12

The only apparent exception that confers jurisdiction on the circuit court is found in MCL 418.131(1):

> The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury.

Here, plaintiff has not presented an intentional tort claim. The fundamental question presented here is whether the circuit court has jurisdiction over a case after a party has raised the question whether the claim sounds in worker's compensation rather than tort.

### C. The WDCA and the Circuit Court Subject-Matter Jurisdiction

MCL 418.841(1) of the WDCA provides:

> *Any* dispute or controversy concerning compensation or other benefits shall be submitted to the bureau and *all questions arising under this act shall be determined by the bureau or a worker's compensation magistrate*, as applicable. [Emphasis supplied.]

The WDCA sets up comprehensive procedures for resolving disputes "arising under" the act. For example, MCL 418.847(1) provides that a "party in interest" may apply for a hearing before a worker's compensation magistrate. MCL 418.847(2) provides that a magistrate must file a written order and "a concise written opinion stating

13

his or her reasoning for the order including any findings of fact and conclusions of law."

MCL 418.859a and 418.861a establish the procedures a party must follow in order to appeal a magistrate's decision within the WCB. MCL 418.859a provides that "a claim for review of a case for which an application under section 847 is filed . . . shall be filed with the appellate commission." MCL 418.861a(1) provides that any claim for review filed pursuant to § 859a "shall be heard and decided by the appellate commission [WCAC]." During that process, the WCAC may "remand [the] matter to a worker's compensation magistrate for purposes of supplying a complete record if it is determined that the record is insufficient for purposes of review." MCL 418.861a(12)

Judicial review of magistrate and WCAC decisions is circumscribed under the WDCA. MCL 418.861 provides:

> The findings of fact made by the board acting within its powers, in the absence of fraud, shall be conclusive. The court of appeals and the supreme court shall have power to review questions of law involved in any final order of the board, if application is made by the aggrieved party within 30 days after such order by any method permissible under the rules of the courts of the laws of this state.

MCL 418.861a(14) similarly provides:

> The findings of fact made by the commission acting within its powers, in the absence of fraud, shall be conclusive. The court of appeals

14

and the supreme court shall have the power to review questions of law involved with any final order of the commission, if application is made by the aggrieved party within 30 days after the order by any method permissible under the Michigan court rules.

Significantly, the WDCA sets up no substantive right to or procedural mechanism for circuit court resolution or review of legal or factual questions regarding application of the WDCA. On the contrary, as noted earlier, in MCL 418.841, the Legislature directed that "[a]*ny dispute* or controversy concerning compensation or other benefits shall be submitted to the bureau and *all questions* arising under this act shall be determined by the bureau or a worker's compensation magistrate . . . ." (Emphasis supplied.)

Where, as here, the employment status of an injured plaintiff is in dispute, the issue is whether that dispute is one "arising under" the WDCA. If the dispute over employment status is not one "arising under" the WDCA, then MCL 418.841 does not preclude a circuit court from exercising jurisdiction over that determination. Conversely, if the dispute over employment status *is* a question "arising under" the WDCA, then a circuit court lacks subject-matter jurisdiction over those initial determinations by virtue of the Legislature's direction in MCL 418.841(1) that "all" such questions "*shall be*

determined by the bureau or a worker's compensation magistrate . . . ." (Emphasis supplied.) The Legislature's use of the word "shall" in a statute "indicates a mandatory and imperative directive" *Burton v Reed City Hosp Corp,* 471 Mich 745, 752; 691 NW2d 424 (2005).

As already discussed, the criteria for determining employment status are comprehensively set forth in, and controlled by, MCL 418.161(1) *of the WDCA*. The question of employee status falls within the category of "all questions arising under" the act. Because the Legislature directed that *all* questions concerning the meaning and application of every provision in the WDCA are to be decided by the WCB or a magistrate, and any dispute regarding whether an injured party is an "employee" is necessarily one "arising under" the WDCA, the WCB is the designated forum to determine that question.

Const 1963, art 6, § 13 provides that "[t]he circuit court shall have original jurisdiction in all matters *not prohibited by law* . . . ." (Emphasis supplied.) By virtue of MCL 418.841(1), it appears that the Legislature "prohibited by law" the exercise of original jurisdiction in the circuit court. Therefore, jurisdiction regarding a party's employment status rests in the first instance

16

exclusively with the WCB or a magistrate. As noted earlier, because the circuit court lacked jurisdiction over the subject matter, the Court of Appeals and this Court lack subject-matter jurisdiction to review that circuit court decision.

D. *Sewell v Clearing Machine Corp*, 419 Mich 56; 347 NW2d 447 (1984)

Despite the clear and unambiguous directive set forth in MCL 418.841, *Sewell, supra,* overrode the statute and declared that the courts and the WCB shared jurisdiction. The *Sewell* Court held that

> the bureau has exclusive jurisdiction to decide whether injuries suffered by an employee were in the course of employment. *The courts, however, retain the power to decide the more fundamental issue whether the plaintiff is an employee (or fellow employee) of the defendant.* [*Sewell, supra* at 62 (emphasis supplied).]

There is no authority cited for this assertion of power. Indeed, the judiciary is powerless to modify unambiguous statutory language in order to inject its own policy preferences. *Rory v Continental Ins Co*, 473 Mich ____; ___ NW2d ___ (2005). Nonetheless, *Sewell* dictated that courts and the WCB would effectively share the power to decide whether an injured party is an "employee" within the meaning of the WDCA. The WCB, however, would retain

17

exclusive jurisdiction over determining whether an injury occurred in the course of employment.

Although *Sewell* cited MCL 418.841, it provided no analysis of that section's sweeping directive that "all questions arising under [the] act shall be determined by the" WCB. Indeed, the opinion is devoid of any analysis of *any* WDCA provisions whatsoever.

Moreover, the perfunctory decision in *Sewell* swept away almost *fifty years of precedent* in which this Court and the Court of Appeals had consistently held that courts lack jurisdiction to determine employment status. *Szydlowski, supra; Jesionowski v Allied Products Corp,* 329 Mich 209; 45 NW2d 39 (1950); *Dershowitz v Ford Motor Co,* 327 Mich 386; 41 NW2d 900 (1950); *Morris v Ford Motor Co,* 320 Mich 372; 31 NW2d 89 (1948); *Munson v Christie*, 270 Mich 94; 258 NW 415 (1935); *Houghtaling v Chapman,* 119 Mich App 828; 327 NW2d 375 (1982); *Buschbacher v Great Lakes Steel Corp,* 114 Mich App 833; 319 NW2d 691 (1982); *Dixon v Sype,* 92 Mich App 144; 284 NW2d 514 (1979); *Herman v Theis,* 10 Mich App 684; 160 NW2d 365 (1968).

*Sewell* wholly disregarded this extensive body of case law, stating:

> Taken alone, those general statements suggest that the bureau's jurisdiction takes precedence over that of the circuit court

18

> whenever there is an issue concerning the applicability of the Worker's Disability Compensation Act. *The rule is not so broad, however.* [*Sewell, supra* at 62.]

Again, the Court cited no authority for that proposition. It is hard to imagine a *broader* rule than the one established by the Legislature in the WDCA, i.e., one covering "*all* questions." This Court's usurpation of legislative power in *Sewell* is nothing short of breathtaking. This Court has stood firm against just such usurpations of legislative power by this branch of government. *Warda, supra; Halloran v Bhan*, 470 Mich 572, 576; 683 NW2d 129 (2004); *Lapeer Circuit Judges, supra; Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2000); *Massey v Mandell*, 462 Mich 375, 379-380; 614 NW2d 70 (2000); *DiBenedetto v West Shore Hosp,* 461 Mich 394, 402; 605 NW2d 300 (2000); *Omne Financial, Inc v Shacks, Inc*, 460 Mich 305, 311; 596 NW2d 591 (1999).

I fully agree with Justice Levin's statement in *Sewell*. He pointed out that the majority's "more fundamental" test was "proffered without analysis, explanation, or justification" and that it "offers no guidance for the resolution of future cases and does not satisfactorily explain the result reached . . . ." *Id.* at 65. He argued that "[t]he issue whether [defendant] was

19

[plaintiff's] employer is no more 'fundamental' than the issue whether [plaintiff's] injuries were suffered in the course of employment." *Id.* at 70.

In announcing a shared jurisdiction paradigm when determining whether the WDCA applies to a claim, *Sewell* overruled *Szydlowski, supra.* In *Szydlowski,* we held that

> "a plaintiff's remedy against an employer based on an injury allegedly arising out of an employment relationship *properly belongs within the workmen's compensation department for initial determination as to jurisdiction and liability.*" [*Szydlowski, supra* at 359, quoting *Herman, supra* at 691 (emphasis supplied).]

This Court explained in *Szydlowski* that "the procedures for workmen's compensation cases have been statutorily established. [*Herman*] properly cautions us against a shortcut or circumvention of those procedures." *Szydlowski, supra* at 359. The WDCA scheme is a complete departure from the common law and equity jurisprudence, as this Court recognized in *Andrejwski v Wolverine Coal Co,* 182 Mich 298, 302-303; 148 NW 684 (1914):

> The act in question, like all similar acts, provides for compensation, and not for damages, and in its consideration and construction all of the rules of law and procedure, which apply to recover damages for negligently causing injury or death, are in these cases no longer applicable, *and there is substituted a new code of procedure fixed and determined by the act in question.* [Emphasis supplied.]

20

The shared jurisdiction paradigm established in *Sewell* not only contradicts the plain language of the WDCA, but it also does violence to the legislative scheme.

## E. Prudential Problems with *Sewell*

As discussed in the previous section, *Sewell* contradicted the clear legislative directive that "*all questions arising under*" the WDCA are to be addressed within the worker's compensation system. That is a sufficient basis to overturn the decision.[14] But *Sewell's* shared jurisdiction paradigm implicates other prudential concerns, quite apart from the absence of judicial authority to negate the legislative scheme. Specifically, it fails to accord the proper deference to agency expertise, and thwarts the goal of consistent and uniform decisions by the WCB.

## 1. Agency Expertise

This Court has acknowledged that administrative agencies possess "superior knowledge and expertise in addressing recurring issues within the scope of their authority." *Travelers Ins Co v Detroit Edison Co,* 465 Mich 185, 200; 631 NW2d 733 (2001). In *Mudel v Great Atlantic & Pacific Tea Co,* 462 Mich 691, 702 n 5; 614 NW2d 607

---

[14] *See Robinson v Detroit,* 462 Mich 439, 473; 613 NW2d 307 (2000) (Corrigan, J., concurring).

(2000), this Court explained that the Legislature created a "two-tier reviewing process, which delegates to the WCAC the role of ultimate factfinder, while limiting the judiciary to the role of guardian of procedural fairness." *Mudel* correctly recognized that

> administrative agencies possess expertise in particular areas of specialization. Because the judiciary has neither the expertise nor the resources to engage in a fact-intensive review of the entire administrative record, that type of detailed review is generally delegated to the administrative body. In the particular context of worker's compensation cases, a highly technical area of law, the judiciary lacks the expertise necessary to reach well-grounded factual conclusions . . . . The judiciary is not more qualified to reach well-grounded factual conclusions in this arena than the administrative specialists. Therefore, the Legislature has decided that factual determinations are properly made at the administrative level, as opposed to the judicial level. [*Id.*]

The rationale underlying this Court's decision in *Sewell* is that resolving the legal question regarding a plaintiff's employment status is not an issue that requires agency expertise. The instant case, however, belies that understanding. Here, three courts have interpreted the same facts three different ways in deciding plaintiff's employment status. The trial court held that plaintiff was not under a "contract of hire" at the time of the accident. The Court of Appeals held that plaintiff was under a contract of hire, but that he was an independent

22

contractor.     Here, the lead opinion concludes that plaintiff was under a contract of hire and was not acting as an independent contractor.

This case itself reflects that the legal question regarding the employment status of an injured party for WDCA purposes can be a complicated and highly fact-driven question.     For that reason, employment status is best determined first by the administrative agency legislatively charged with applying the WDCA.

Even if the Legislature had not clearly directed that *all* questions regarding application of the WDCA be answered within the worker's compensation system, the pre-*Sewell* approach simply works best.     Allowing the agency to decide first which tribunal has jurisdiction over a claim in which the WDCA is implicated maximizes the strengths of both tribunals.     The WCB may apply its expertise to resolve issues of fact in the employment context, while courts, of course, retain appellate review of WCB decisions and resolve questions of law.

### 2. Uniformity and Consistency

The goal of consistent and uniform administrative decision-making is similarly thwarted where multiple forums may decide the same factual question.     As we stated in *Travelers, supra* at 199*:*

23

"[U]niformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure." [Citation omitted.]

Resort to the WCB in the first instance ensures that employment status issues will be resolved in a consistent manner.

Moreover, the shared jurisdiction approach established by *Sewell* suffers from an unconvincing rationale and lack of clarity in application. As Justice Levin aptly opined, there is little reason to assume that employment status determinations are any "more fundamental" than other questions involved in determining whether a plaintiff's claim sounds in worker's compensation or tort. *Sewell, supra* at 70 (Levin, J., concurring). Thus, *Sewell*'s "more fundamental" rationale for concurrent jurisdiction appears both unprincipled and groundless.

### F. *Szydlowski's* Approach

This Court's opinion in *Szydlowski* provides the more textually faithful approach to determining jurisdiction when the WDCA is implicated. Contrary to *Sewell,* the jurisdictional inquiry in the first instance should be

24

referred to the WCB upon petition by either party in a court action.

In addition to being more textually faithful to the WDCA, this approach would avoid lengthy, duplicative litigation by providing a definite jurisdictional starting point. Consider this case: for seven years, the circuit court, the Court of Appeals, and now this Court have grappled with defining and applying the WDCA's terms of art to the facts of this case. The forum legislatively charged with determining *all* questions arising under the WDCA is the WCB, not the courts. That forum is where this class of cases belongs.

I agree that this Court should not lightly overrule precedent.[15] As this Court discussed recently in *People v Davis*, 472 Mich 156, 168 n 19; 695 NW2d 45 (2005),

> the doctrine of stare decisis is not applied mechanically to prevent the Court from overruling previous decisions that are erroneous. We may overrule a prior decision when we are certain that it was wrongly decided and "'less injury will result from overruling than from following it.'" *People v Moore*, 470 Mich 56, 69 n 17; 679 NW2d 41 (2004), quoting *McEvoy v Sault Ste Marie*, 136 Mich 172, 178; 98 NW 1006 (1904).

*Sewell*'s shared jurisdiction approach is not at all faithful to the plain text of the WDCA. The doctrine of

---

[15] *Ante* at 24.

25

stare decisis should not prevail over a legislative directive. As I noted in *Robinson v Detroit*, 462 Mich 439, 472-473; 613 NW2d 307 (2000):

> I agree that too rapid change in the law threatens judicial legitimacy, as it threatens the stability of any institution. But the act of correcting past rulings that usurp power properly belonging to the legislative branch does not threaten legitimacy. Rather, it restores legitimacy. Simply put, our duty to act within our constitutional grant of authority is paramount. If a prior decision of this Court reflects an abuse of judicial power at the expense of legislative authority, a failure to recognize and correct that excess, even if done in the name of stare decisis, would perpetuate an unacceptable abuse of judicial power. [Corrigan, J., concurring.]

## IV. Conclusion

In sum, *Sewell*'s assumption of circuit court jurisdiction over determining employment status contradicts the plain language of the WDCA. Determining employment status is a fact-driven undertaking requiring interpretation and application of the WDCA. Such questions should be determined first by the forum legislatively charged with interpreting and applying the act. For the foregoing reasons, I conclude that the circuit court and the Court of Appeals lack subject-matter jurisdiction over this matter. Although I agree that the jurisdictional issue was posed at a very late stage, I would nonetheless direct the parties to brief this jurisprudentially

significant problem of jurisdiction and submit the case on this narrow question.

                    Maura D. Corrigan